IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| SANTANDER CONSUMER USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> ELISABETH RIEGER, CHERYL JOHNSON-MORRIS, CORNELIUS MCALLISTER, GABRIELA MCALLISTER, and KIM TURNER. <br><br> Defendants. | Case No. 1:15-cv-02828 <br><br> Judge <br><br> Magistrate Judge |

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

Plaintiff Santander Consumer USA, Inc. ("SCUSA") brings this action against Defendants Elisabeth Rieger, Cheryl Johnson-Morris, Cornelius McAllister, Gabriela McAllister, Kim Turner and alleges as follows:

**NATURE OF THE ACTION**

1. SCUSA seeks a declaration that no agreement to arbitrate or valid arbitration clause exists between SCUSA and any of the Defendants and, therefore, that SCUSA has no obligation and the Defendants have no right to arbitrate any dispute between them. Each of the Defendants has already initiated arbitration with the American Arbitration Association ("AAA"). But in contravention of the AAA's rules, the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*., and good faith pleading requirements, the Defendants have not, and cannot, attach any arbitration provision that would bind the parties. Indeed, Defendants' counsel, Edelson P.C., has hastily

redacted another consumer's name and signature from what it mischaracterizes as a "form" arbitration agreement in order to convince the AAA that an arbitration agreement must exist between SCUSA and the Defendants.

2. Yet the AAA has refused, despite repeated requests from SCUSA, to close or stay the proceedings brought by the Defendants unless and until the Defendants are able to produce signed arbitration agreements. The AAA also has made clear that it intends to proceed with these matters, and that it believes that its arbitrators should decide the issue of their own jurisdiction, even though no arbitration agreement exists that would give them the authority to do so. SCUSA, therefore, also seeks to enjoin these improper and unsupported arbitration proceedings.

3. This action thus presents the straightforward question of whether a claimant may initiate, and ultimately pursue, arbitration (1) without having any idea whether a binding arbitration provision exists that would govern his or her claims, and (2) when, in fact, there is no such provision. SCUSA respectfully submits that such an action is improper.

## THE PARTIES

4. SCUSA is a corporation organized under the laws of Illinois, with its principal place of business In Dallas, Texas. SCUSA is principally engaged in providing automobile financing to consumers.

5. Defendant Elisabeth Rieger is a natural person who, upon information and belief, is domiciled in Waukegan, Illinois.

6. Defendant Johnson-Morris is a natural person who, upon information and belief, is domiciled in Chicago, Illinois.

7. Defendant Cornelius McAllister is a natural person who, upon information and belief, is domiciled in Bellwood, Illinois.

8. Defendant Gabriella McAllister is a natural person who, upon information and belief, is domiciled in Bellwood, Illinois.

9. Defendant Turner is a natural person who, upon information and belief, is domiciled in Cairo, Illinois.

## JURISDICTION AND VENUE

10. SCUSA brings this action for a declaratory judgment and injunctive relief pursuant to 28 U.S.C §§ 2201 and 2202, and 9 U.S.C. § 3.

11. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because SCUSA seeks a declaration and injunctive relief regarding the Defendants' arbitration claims, which arise under federal law. In addition, the controversy arises under the Federal Arbitration Act, 9 USC § 1 *et seq*.

12. The Court has personal jurisdiction over all Defendants, because they are citizens of Illinois, and because the Court has specific personal jurisdiction over Defendants based on this dispute.

13. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(1), because Defendants Rieger, Johnson-Morris, Cornelius McAllister, and Gabriella McAllister reside in this District, and all Defendants reside in Illinois.

14. Venue also is proper in this District under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims occurred in this District. For example, all Defendants seek to have their arbitrations heard at locations within this District, and the AAA has assigned arbitrators from this District to each of these proceedings.

**FACTS**

15. Defendant Rieger initiated an arbitration proceeding against SCUSA on September 19, 2014, to which the AAA assigned Case No. 01-14-0001-4992. A copy of her demand, along with supporting documents and correspondence, is attached hereto as **Exhibit A**.

16. Defendant Johnson-Morris initiated an arbitration proceeding against SCUSA on September 19, 2014, to which the AAA assigned Case No. 01-14-0001-4991. A copy of her demand, along with supporting documents and correspondence, is attached hereto as **Exhibit B**.

17. Defendant Cornelius McAllister initiated an arbitration proceeding against SCUSA on September 19, 2014, to which the AAA assigned Case No. 01-14-0001-4977. A copy of his demand, along with supporting documents and correspondence, is attached hereto as **Exhibit C**.

18. Defendant Gabriela McAllister initiated an arbitration proceeding against SCUSA on September 19, 2014, to which the AAA assigned Case No. 01-14-0001-4980. A copy of her demand, along with supporting documents and correspondence, is attached hereto as **Exhibit D**.

19. Defendant Turner initiated an arbitration proceeding against SCUSA on September 19, 2014, to which the AAA assigned Case No. 01-14-0001-4993. A copy of her demand, along with supporting documents and correspondence, is attached hereto as **Exhibit E**.

20. In their arbitration demands and accompanying correspondence, the Defendants purport to have received telephone calls that they allege violated the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). In other words, the Defendants' claims against SCUSA in their arbitrations rest exclusively on federal law. Each Defendant seeks

thousands of dollars in compensatory and statutory damages, an injunction against future purported "unsolicited and harassing phone call activities," and attorneys' fees.

21. But contrary to the AAA's rules, the Defendants and their attorneys did not attach to their demands the provision in which they claim SCUSA agreed to arbitrate any disputes. Indeed, all five Defendants, and their attorneys, acknowledge that they were "unable to locate [his/her] original loan agreement" that gave rise to the indebtedness assigned to SCUSA.

22. The Claimant Defendants instead attach what they contend is either a form CitiFinancial Auto Credit, Inc. ("CitiFinancial") "Arbitration Agreement" *or* an HSBC Auto Finance ("HSBC") "Agreement to Arbitrate" that is blank and unsigned by any party. In fact, these documents are *not* form agreements. Rather, counsel for the Claimant Defendants sloppily redacted the names and signatures from arbitration agreements executed by other consumers. For Defendants Cornelius McAllister, Gabriela McAllister, Rieger and Turner, counsel for Defendants submitted a 2007 arbitration agreement executed by a consumer named Billy Ivy and a dealership called Glynn Smyth Automotive LLC. If the agreements attached in **Exhibits A** and **C-E** are opened and viewed quickly, or viewed at varying sizing using the zoom-in/out feature, the names and signatures that were hastily redacted appear as shown:

> Special Acknowledgments. You understand that (i) the vehicle and other goods, products and services for Your Credit Transaction, as well as the funding for your credit transaction, will come in whole or in part from sources outside this state, which will constitute interstate commerce within the meaning of the Federal Arbitration Act, 9 U.S.C. §§1-9; and (ii) a court or jury will not hear or decide any Claim governed by this Agreement.
>
> BEFORE SIGNING, READ THIS ARBITRATION AGREEMENT CAREFULLY, INCLUDING THE TERMS ON THE REVERSE SIDE. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO MAINTAIN A COURT ACTION.
>
> Purchaser  Billy Ivy          Seller  Glynn Smyth Automotive L.L.C.
>
> ___Billy___                   By: _____ 7-18-07
> Purchaser
>
> NOTICE: THE TERMS AND CONDITIONS ON THE OTHER SIDE ARE PART OF THIS ARBITRATION AGREEMENT.

23. Despite these doctored agreements, the Defendants contend that because SCUSA "has since taken over the loan from [CitiFinancial or HSBC], it will be able to locate and provide

a copy" of the Defendants' loan agreements, which they hope will include "materially identical" terms to the CitiFinancial or HSBC "form" agreement.

24. Loans in SCUSA's auto financing portfolio – including those originally held by CitiFinancial and HSBC – were originated by thousands of automobile dealerships throughout the country. These dealerships use different form retail installment contracts, some of which contain arbitration provisions, some of which do not. It is far from a foregone conclusion that any particular contract assigned to SCUSA – by CitiFinancial, HSBC or any other lender – would have an arbitration provision. In fact, the agreements giving rise to a significant percentage of SCUSA-assigned auto loans do ***not*** contain any arbitration provision.

25. SCUSA has carefully reviewed its files for the Defendants' accounts, and has found no documents with any arbitration provisions. As far as SCUSA is aware, no arbitration provision exists governing the relationship between SCUSA and any of the Defendants. Put another way, as far as SCUSA is aware – and the Defendants have never demonstrated otherwise – there is no arbitration provision that would permit the Defendants to initiate arbitrations against SCUSA.

26. The Defendants, their attorneys, and the AAA are well aware that SCUSA's search has uncovered no such arbitration provisions. Indeed, in January 2015 counsel for the Defendants offered to dismiss all five proceedings if SCUSA would stipulate that no arbitration agreement existed, and that SCUSA has waived its right to compel arbitration in any future action brought by the Defendants. Counsel for the Defendants would not have offered to do so without an awareness that no arbitration agreements existed between the parties. When SCUSA's counsel agreed to accept the offer subject to minor changes in the stipulation's wording, counsel for the Defendants did not respond.

27. Despite this awareness, the Defendants continue to aggressively pursue their arbitrations. Moreover, on March 4, 2015, the AAA made an "administrative determination" with respect to Defendant Rieger's arbitration proceeding that her attempt to initiate arbitration without any signed, enforceable arbitration agreement was sufficient to permit the arbitrator assigned to the proceeding to determine the arbitrability of her claims. The AAA made the same determination with respect to Defendant Johnson-Morris' proceeding on March 23, 2015. The Defendants, who all are represented by the same counsel, despite knowing that no valid arbitration provision exists have steadfastly refused to dismiss the arbitrations they filed. Defendants further responded to SCUSA's request for the AAA to reconsider this decision that, "barring any Court order, Claimant's position is that we should move forward with the arbitration at this time."

28. On March 23, 2015 the AAA denied SCUSA's request that it reconsider its "administrative determination" that the Defendants' arbitrations may proceed. Indeed, shortly thereafter the AAA sought, in all five proceedings, to set a hearing date in early or mid April for the arbitrators assigned to each proceeding to decide whether they have jurisdiction to proceed. The AAA already has set two of these hearings – one for Defendant Rieger's proceeding on April 7, 2015, and one for Defendant Johnson-Morris' proceeding on April 9, 2015. The AAA made clear in its decisions that it believes that its arbitrators are permitted to decide the issue of jurisdiction, even though neither side is aware of any arbitration agreement that would grant the AAA that power.

29. SCUSA has consistently objected to permitting the arbitrators assigned to the Defendants' proceedings to decide the issue of arbitrability of Defendants' claims.

30. All the more baffling, the AAA's position with respect to the Defendants' proceedings is in sharp contrast to the way it has handled identical scenarios. On March 17, 2015, for example, SCUSA lodged an objection with the AAA with respect to four other arbitration proceedings (the "Other Arbitrations") brought by another law firm. The demands filed in these Other Arbitrations asserted the same claims as those made in the Defendants' demands, and just like the Defendants' demands, were filed without any signed arbitration agreement attached. Mere days before the AAA would reject SCUSA's request to reconsider its ruling that it would go forward with the Defendants' proceedings, the AAA ruled that the Other Arbitrations could not proceed. Specifically, the AAA explained in a March 19, 2015 email that "the AAA has closed the four cases upon which an objection has been raised," and that it would only consider reopening them "*[u]pon receipt of an executed agreement*[.]" (Emphasis added).

31. There was one, critical difference between the Defendants' proceedings and these other arbitrations. In both sets of proceedings, along with its objection SCUSA refused to pay its share of the AAA's fees. But counsel for the Defendants chose to pay, up front, **_all_** of the AAA's fees, even SCUSA's share. In short, as long as it has been fully paid, the AAA has seen fit to ignore its own rules regarding what must be filed to initiate arbitration, and ignore the obvious logic that arbitration cannot proceed without an agreement to arbitrate existing between the Claimant Defendants and SCUSA.

## COUNT I
**(Declaratory Judgment)**

32. SCUSA incorporates by reference paragraphs 1-31 above as if fully set out herein.

33. The Defendants have failed to produce an arbitration provision that would allow them to pursue any claims against SCUSA. Indeed, the Defendants readily admit that they are not in possession of copies of their loan agreements, and thus, have no idea whether their claims

- 9 -

against SCUSA are governed by arbitration provisions. Instead, Defendants have attempted to pass off sloppily-redacted arbitration agreements signed by other consumers.

34. SCUSA has found no such provisions in its records for the Defendants, and believes that no such arbitration provisions exist. SCUSA, therefore, is under no obligation to arbitrate the Defendants' claims before the AAA.

35. In light of the Defendants' arbitration demands, the AAA's recent administrative determination and subsequent rulings, and the Defendants' explicit intention to move forward with their arbitration proceedings absent a court order, an actual controversy exists between the parties as to whether there is any obligation to arbitrate the Defendants' claims.

36. The Declaratory Judgment Act, 28 U.S.C. § 2201, provides the authority for this Court to declare the rights and liabilities of the parties with respect to the arbitrability of Defendants' demands filed with the AAA.

**COUNT II**
**(Injunctive Relief)**

37. SCUSA incorporates by reference paragraphs 1 through 36 above as if fully set forth herein.

38. The Declaratory Judgment Act, 28 U.S.C. § 2202, provides the authority for this Court to enjoin the Defendants from seeking to arbitrate any claims against SCUSA without a valid arbitration agreement, and to enjoin the AAA from proceeding further with the administration of such arbitrations.

39. Moreover, the Court has the authority under 9 U.S.C. § 3 to enjoin arbitration where no valid arbitration provision exists – this authority being "the concomitant of the power

to compel arbitration where it is present." *Societe Generale de Surveillance, S.A. v. Raytheon European Management & Systems Co.*, 643 F.2d 863, 868 (1st Cir. 1981).

40. Permitting the Defendants to proceed with arbitrating their claims would cause SCUSA irreparable harm by forcing SCUSA to expend time and resources to arbitrate claims it never agreed to arbitrate and for which any AAA arbitration award would not be enforceable.

41. This harm may only be prevented by enjoining the Defendants from seeking to arbitrate the claims before the AAA.

42. SCUSA has no adequate remedy at law.

**PRAYER FOR RELIEF**

Based upon all of the foregoing, SCUSA respectfully requests that the Court grant the following judgment and relief:

(a) Enter a declaratory judgment that no binding arbitration provision exists between any Defendant and SCUSA;

(b) Enter a declaratory judgment that SCUSA has no obligation to arbitrate any claims asserted by the Defendants with the AAA;

(c) Upon separate motion, and if necessary by the Defendants' continued attempts to pursue their arbitrations and/or the AAA's refusal to stay or close such arbitrations pending a ruling of this Court, preliminarily enjoin Defendants from proceeding with these arbitrations;

(d) Enter an order permanently enjoining the Defendants from seeking arbitration of any claims against SCUSA with the AAA or any other arbitration tribunal;

(e) SCUSA's attorneys' fees and costs expended for having to pursue the relief requested herein to stop the Defendants' bad faith arbitration filings; and

(f) All other and further relief as this Court shall deem just and proper.

Respectfully submitted,

/s/ Tyler S. Mertes

Tyler S. Mertes
TROUTMAN SANDERS LLP
55 W. Monroe St. #3000
Chicago, IL 60603
Telephone: (312) 759-5944
Facsimile: (312) 759-1939
Email: tyler.mertes@troutmansanders.com

Of counsel:

Chad R. Fuller
Nicholas R. Klaiber
TROUTMAN SANDERS LLP
11682 El Camino Real, Suite 400
San Diego, CA 92130

*Attorneys for Plaintiff Santander Consumer USA, Inc.*

25294774v1